UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

SUSAN HASSETT,

                    Plaintiff,

           v.

ELISABETH HASSELBECK, CENTER STREET
HACHETTE BOOK GROUP AND JOHN DOE,

               Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

:   **<u>Oral Argument Requested</u>**
:
:
:
:
:   09-CV-12034 (MLW)
:
:
:
:
:

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'
MOTION TO DISMISS THE COMPLAINT**

GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue, 47th Floor
New York, New York 10166-0193
Telephone: 212.351.4000
Facsimile: 212.351.4035

NUTTER, MCCLENNEN & FISH LLP
Seaport West
155 Seaport Boulevard
Boston, MA 02210-2604
Telephone: 617.439.2262
Facsimile: 617.310.9262

*Attorneys for Defendants Elisabeth
Hasselbeck and Hachette Book Group*

## TABLE OF CONTENTS

<u>Page</u>

PRELIMINARY STATEMENT ............................................................... 1

FACTUAL ALLEGATIONS .................................................................. 2

STANDARD ON THIS MOTION ........................................................... 3

ARGUMENT .......................................................................................... 5

    A.    The Elements Of A Copyright Infringement Claim ................................ 5

    B.    The Alleged Similarities Are Not Actionable As A Matter Of Law ..................... 8

        1.    The Allegedly Similar Facts Cannot Support A Finding Of Copyright Infringement. .......................................... 9

        2.    The Allegedly Similar Ideas And Associated Stock Elements Cannot Support A Finding Of Copyright Infringement. .......................... 12

        3.    The Allegedly Similar Words And Short Phrases Cannot Support A Finding Of Copyright Infringement. ...................................... 14

        4.    The Allegedly Similar "Framework" Cannot Support A Finding Of Copyright Infringement. ......................................... 16

    C.    The Substantial Dissimilarities Between The Two Works Preclude Any Finding Of Copyright Infringement ............................................. 18

CONCLUSION ..................................................................................... 20

# TABLE OF AUTHORITIES

Page(s)

## Cases

*Adams v. Warner Bros. Pictures Network*,
   No. 05 CV 5211, 2007 WL 1959022 (E.D.N.Y. June 29, 2007)................7

*Arica Inst., Inc. v. Palmer*,
   970 F.2d 1067 (2d Cir. 1992)................17

*Bell v. Blaze Magazine*,
   No. 99 Civ. 12342, 2001 WL 262718 (S.D.N.Y. Mar. 16, 2001) ................7

*Boyle v. Stephens, Inc.*,
   No. 97 Civ. 1351, 1998 WL 80175  (S.D.N.Y. Feb. 25, 1998),
   *aff'd*, 21 Fed. Appx. 76 (2001)................7

*Buckman v. Citicorp*,
   No. 95 Civ. 0773, 1996 WL 34158 (S.D.N.Y. Jan. 30, 1996),
   *aff'd*, 101 F.3d 1393 (2d Cir. 1996)................7

*Churchill Livingstone, Inc. v. Williams & Wilkins*,
   949 F. Supp. 1045 (S.D.N.Y. 1996)................10

*CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*,
   97 F.3d 1504 (1st Cir. 1996)................15

*Cooling Sys. & Flexibles, Inc. v. Stuart Radiator, Inc.*,
   777 F.2d 485 (9th Cir. 1985)................9

*Debitetto v. Alpha Books*,
   7 F. Supp. 2d 330 (S.D.N.Y. 1998)................9, 10

*Duffy v. Penguin Books USA Inc.*,
   4 F. Supp. 2d 268 (S.D.N.Y. 1998)................13, 16

*Dunn v. Brown*,
   517 F. Supp. 2d 541 (D. Mass. 2007)................4, 5, 7, 9, 17

*Durham Industries. Inc. v. Tomy Corp.*,
   630 F.2d 905 (2d Cir. 1980)................18

*Feist Publ'ns, Inc. v. Rural Tel. Servs., Inc.*,
   499 U.S. 340 (1991)................5, 9, 17

*Flaherty v. Filardi*,
   388 F. Supp. 2d 274 (S.D.N.Y. 2005)................4

*Fudge v. Penthouse Int'l Ltd.*,
   840 F.2d 1012 (1st Cir. 1988)................4

*Greenberg v. Town of Falmouth*,
   No. 04-11934, 2006 WL 297225 (D. Mass. Feb. 8, 2006)................6, 7

**TABLE OF AUTHORITIES**   *[continued]*

Page(s)

*Hassett v. Hasselbeck, et al.*,
   1:09-cv-11063-JLT (D. Mass.) .................................................................................. 2

*Hoehling v. Universal City Studios*,
   618 F.2d 972 (2d Cir. 1980)................................................................................. 9, 12

*Johnson v. Gordon*,
   409 F.3d 12 (1st Cir. 2005).............................................................................. 6, 12, 15

*Lapine v. Seinfeld*,
   No. 08 Civ. 128, 2009 WL 2902584 (S.D.N.Y. Sept. 10, 2009),
   *aff'd*, No. 09-4423-cv, 2010 WL 1688713 (2d Cir. Apr. 28, 2010) ...................... 7, 13, 17

*Le Book Publ'g, Inc. v. Black Book Photography, Inc.*,
   418 F. Supp. 2d 305 (S.D.N.Y. 2005)........................................................................ 7

*Matthews v. Friedman*,
   157 F.3d 25 (1st Cir. 1998)...................................................................................... 16

*O'Neill v. Dell Publ'g Co.*,
   630 F.2d 685 (1st Cir. 1980).................................................................................. 4, 6

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
   602 F.3d 57 (2d Cir. 2010).................................................................................... 4, 7

*Polsby v. St. Martin's Press, Inc.*,
   8 Fed. Appx. 90 (2d Cir. May 8, 2001)....................................................................... 4

*Quaglia v. Bravo Networks*,
   No. 06-1864, 2006 WL 3691667 (1st Cir. Dec. 15, 2006) ............................................ 7

*Rederford v. U.S. Airways, Inc.*,
   589 F.3d 30 (1st Cir. 2009)....................................................................................... 4

*Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev.*,
   421 F.3d 1 (1st Cir. 2005)......................................................................................... 3

*Rodriguez v. Casa Salsa Rest.*,
   260 F. Supp. 2d 413 (D.P.R. 2003)........................................................................ 7, 18

*Steele v. Turner Broad. Sys., Inc.*,
   646 F. Supp. 2d 185 (D. Mass. 2009)................................................................... 12, 15

*Walker v. Time Life Films, Inc.*,
   615 F. Supp. 430 (S.D.N.Y. 1985)....................................................................... 4, 12

*Warner Bros. Inc. v. Am. Broad. Cos.*,
   654 F.2d 204 (2d Cir. 1983)..................................................................................... 16

*Williams v. Crichton*,
   84 F.3d 581 (2d Cir. 1996)....................................................................................... 12

**TABLE OF AUTHORITIES**   *[continued]*

Page(s)

*Willis v. Home Box Office,*
    No. 00 Civ. 2500, 2001 WL 1352916 (S.D.N.Y. Nov. 2, 2001);
    *aff'd*, 57 Fed. Appx. 902 (2d Cir. 2003) ........................................................ 4

*Yankee Candle Co. v. Bridgewater Candle Co.,*
    259 F.3d 25 (1st Cir. 2001) .............................................................. 5, 6, 9

**Statutes**

17 U.S.C. § 102(b) ................................................................................ 12

**Rules**

Fed. R. Civ. P. 12(b)(6) ........................................................................... 3

Fed. R. Civ. P. 12(d) .............................................................................. 4

**Regulations**

37 C.F.R. § 202.1(a) (1994) ...................................................................... 15

Defendants Elisabeth Hasselbeck and Center Street, an imprint of Hachette Book Group, Inc., (collectively, "Defendants") respectfully submit this memorandum of law in support of their motion to dismiss the complaint filed by Plaintiff Susan Hassett for failure to state a claim.

## PRELIMINARY STATEMENT

This lawsuit is a misguided attempt by Susan Hassett to capitalize on the success of *The G-Free Diet: A Gluten-Free Survival Guide*, Elisabeth Hasselbeck's best-selling guide to gluten-free living for readers, like her, suffering from celiac disease.[1]  For more than one year, Hassett has shamelessly attacked Defendants in the press and cluttered this Court's docket with her baseless allegation that *The G-Free Diet* infringes her self-published book, *Living With Celiac Disease*.  This opportunistic claim is premised on a fundamental misunderstanding of copyright law and a distortion of the works in question.

Hassett's laundry list of alleged similarities—plucked at random from the two works and presented in misleading charts attached to her complaint—boils down to a frivolous claim of exclusive rights in (1) <u>basic medical facts</u> about celiac disease and scientific facts about gluten; (2) <u>stock elements</u> common to the genre, such as personal anecdotes and tips for eating gluten-free; (3) <u>commonplace words</u> and <u>inevitable phrases</u>; and (4) the <u>generic structure</u> of a self-help book.  But the law is clear: the copyright laws do not protect such basic facts, ideas, stock elements, common phrases, and unoriginal structures.  Once these non-copyrightable elements are disregarded—as they must be under controlling First Circuit authority—Hassett's bogus case collapses like a house of cards.  To assist the Court, Appendix A to this brief addresses *all* of the purported similarities identified by Hassett in her exhibits and demonstrates, one-by-one, that each is based upon unprotectable elements, reflects no substantial similarity in any protected

---

[1]  Celiac disease is a digestive and autoimmune disorder that results in damage to the lining of the small intestine when gluten is ingested.

expression, and fails to support an infringement claim as a matter of law.

Hassett's complaint must be dismissed because there is no substantial similarity in any copyrightable expression between the two works.  At core, Hassett improperly seeks to preclude any other person from writing a book concerning how to live with celiac disease.  But the copyright laws do not bestow such a monopoly.  Indeed, not surprisingly, a myriad of self-help works about celiac disease published before Hassett allegedly created her book—such as *The Gluten-Free Bible* (2005), *Celiac Disease: A Hidden Epidemic* (2006) and *Living Gluten Free for Dummies* (2006)—cite the same medical and scientific facts, employ the same stock themes and general format, and use the same words and short phrases that Hassett now contends belong exclusively to her.  While Hassett's claim can be disposed of on the face of her complaint and the works at issue, these judicially noticeable facts underscore the absurdity of Hassett's case.

This Court, like numerous others, has swiftly disposed of meritless copyright claims where, as here, the only alleged similarities relate to facts, ideas, mundane themes, common phrases, or other non-copyrightable material.  Hassett has dragged on her meritless lawsuit for long enough.  No further amendment to the complaint and no amount of discovery can change the written words on the page, or save Hassett's legally deficient claim. The complaint should be dismissed with prejudice.[2]

## FACTUAL ALLEGATIONS

Susan Hassett is the author of the self-published book, *Living With Celiac Disease*, which she allegedly copyrighted in March 2008.  Compl. (Dkt. 1) ¶¶ 2, 4.  Elisabeth Hasselbeck is co-host of the television show *The View* and the author of *The G-Free Diet*, which was published by

---

[2]  While the undersigned counsel does not represent "John Doe," the purported "ghost writer" of *The G-Free Diet*, the claim and allegations against Doe are identical to those against Defendants.  Because Hassett's claim is deficient as a matter of law, the entire complaint should be dismissed with prejudice.

Center Street, an imprint of Hachette Book Group, Inc., in May 2009.  Compl. ¶¶ 5, 13.  On June

22, 2009, Hassett filed an action in this Court, asserting claims of copyright infringement against

Defendants.  *Hassett v. Hasselbeck, et al.*, 1:09-cv-11063-JLT (D. Mass.).  On November 2,

2009, Judge Joseph L. Tauro dismissed the case pursuant to Local Rule 4(m) for want of

prosecution.  Declaration of Orin Snyder, dated August 2, 2010, ("Snyder Decl.") Ex. 1.[3]

On November 30, 2009, Hassett re-filed her complaint in this Court *pro se*, alleging that

*The G-Free Diet* is "substantially similar to [Hassett's] copyrighted book."  Compl. ¶ 5.

Specifically, Hassett alleges that *The G-Free Diet* includes "dozens of paraphrased as well as

word for word phrase lifts," which she purports to summarize in a "color coded compendium"

attached to the complaint.  Compl. ¶ 15, Ex. D.  Hassett also alleges that *The G-Free Diet*

"utilizes almost an identical order and format of 13 chapters" of Hassett's work, which she

purports to present in another exhibit to the complaint.  Compl. ¶ 16, Ex. C.  In the version of the

complaint that Hassett served on Defendants,[4] she further alleges that *The G-Free Diet* includes

"scrupulously researched factual data entries found in" her book.  Snyder Decl. Ex. 3 ¶¶ 15.

## STANDARD ON THIS MOTION

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates dismissal of a complaint

that fails to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).

Although the court must assume the truth of all factual statements alleged in the complaint, the

court "need not credit 'bald assertions, unsupportable conclusions, periphrastic circumlocutions,

---

[3]  Defendant's memorandum of law in opposition to Hassett's motions for injunctive relief, filed concurrently herewith, charts in greater detail the procedural history of this case and Hassett's repeated attempts to manipulate the press and this Court.

[4]  The complaint served on Defendants differs from the complaint filed with the Court, specifically with respect to paragraphs 15 and 16.  *Compare* Snyder Decl. Ex. 3 ¶¶ 15-16 *with* Snyder Decl. Ex. 2 ¶¶ 15-16.  To avoid any confusion, and because both pleadings are legally deficient, this motion addresses both versions.

and the like.'" *Redondo-Borges v. U.S. Dep't of Hous. & Urban Dev.*, 421 F.3d 1, 5 (1st Cir. 2005).  The court may consider documents attached to the complaint, any documents incorporated by reference, and matters susceptible to judicial notice when determining whether a complaint should survive a Rule 12(b)(6) motion.  *Rederford v. U.S. Airways, Inc.*, 589 F.3d 30, 35 (1st Cir. 2009).

A document may be incorporated if it is referred to in the complaint and central to the plaintiff's claim.  *See Fudge v. Penthouse Int'l Ltd.*, 840 F.2d 1012, 1015 (1st Cir. 1988). Central to any claim of copyright infringement is a comparison of the copyrighted work and the allegedly infringing work.  *See, e.g., O'Neill v. Dell Publ'g Co.*, 630 F.2d 685, 690 (1st Cir. 1980).  Thus, it is entirely appropriate for this Court to incorporate both *Living With Celiac Disease* and *The G-Free Diet* in their entirety—which are both central to the claim and cited extensively by Hassett in her pleading—when ruling on this motion to dismiss.  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010).  Indeed, it is clear that the works must supersede "'any contrary allegations, conclusions or descriptions of the works contained in the pleadings.'"  *Id*.  Further, in copyright infringement actions, courts have taken judicial notice of facts within the public domain and of previously published works for purposes of its substantial similarity analysis.  *See, e.g., Willis v. Home Box Office*, No. 00 Civ. 2500, 2001 WL 1352916, at *2 (S.D.N.Y. Nov. 2, 2001) (judicially noticing that many prior works contain characters that are unethical), *aff'd*, 57 Fed. Appx. 902 (2d Cir. 2003); *Walker v. Time Life Films, Inc.*, 615 F. Supp. 430, 438 (S.D.N.Y. 1985).[5]

---

[5]  Although the Court may properly consider the prior works under Rule 12(b)(6), this motion may also be treated as one for summary judgment under Rule 56 if the Court deems the works to be outside the pleadings.  Fed. R. Civ. P. 12(d).  In either case, discovery is neither necessary nor appropriate for the resolution of the motion.  *O'Neill v. Dell Publ'g Co.*, 630 F.2d 685, 690 (1st Cir. 1980); *Dunn v. Brown*, 517 F. Supp. 2d 541, 543 (D. Mass. 2007); *see* [Footnote continued on next page]

4

**ARGUMENT**

Hassett's complaint fails as a matter of law.  Disregarding the most basic principles of copyright law, Hassett seeks exclusive rights in facts about celiac disease and gluten; stock elements common to the genre; a scattershot selection of words and short phrases; and a generic format.  None of these elements is eligible for copyright protection and none can be considered when ruling on Hassett's claim.  Tellingly, countless prior works—from how-to manuals to medical treatises—contain the very same unoriginal elements that Hassett, by this action, seeks to prevent anyone from using.  When these unprotected elements are stripped away, all that remains are the numerous, obvious *dissimilarities* between the works in content, style and tone.  Because Hassett's claim of copyright infringement is built entirely on alleged similarities that are legally non-actionable—and because there is no substantial similarity of any protectable expression in the works—it fails as a matter of law and should be dismissed with prejudice.

A.      **The Elements Of A Copyright Infringement Claim**

To prevail on the merits of her copyright infringement claim, Hassett must establish both the ownership of a valid copyright and copying by the defendant of constituent elements of the work that are original.  *Feist Publ'ns, Inc. v. Rural Tel. Servs., Inc.*, 499 U.S. 340, 361 (1991).  The second prong of *Feist* consists of two parts:  (1) the plaintiff must prove that the defendant actually copied the plaintiff's copyrighted work as a factual matter, *and* (2) the plaintiff must prove that the copying of the protected expression was "so extensive that it rendered the infringing and copyrighted works 'substantially similar.'"  *Yankee Candle Co. v. Bridgewater Candle Co.*, 259 F.3d 25, 33 (1st Cir. 2001) (citation omitted).  This motion focuses only on whether the two works are substantially similar in protected expression—an essential element of

[Footnote continued from previous page]
also *Polsby v. St. Martin's Press, Inc.*, 8 Fed. Appx. 90, 92 (2d Cir. May 8, 2001); *Flaherty v. Filardi*, 388 F. Supp. 2d 274, 291 (S.D.N.Y. 2005).

Hassett's claim and an issue for which "neither discovery nor expert evidence is needed, or even appropriate." *Dunn v. Brown*, 517 F. Supp. 2d 541, 544 (D. Mass. 2007) (granting pre-discovery dismissal of infringement claim where a review of the two books confirmed that no substantial similarity of protected expression existed); *see O'Neill v. Dell Publ'g Co.*, 630 F.2d 685, 690 (1st Cir. 1980) (affirming dismissal of infringement claim after comparing the books in question and observing that no amount of discovery "could change the written words of two novels").[6]

In determining whether two works are substantially similar, courts apply the "ordinary observer" test, which examines "whether the accused work is so similar to the plaintiff's work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the plaintiff's protected expression by taking material of substance and value." *Yankee Candle Co.*, 259 F.3d at 33 (quotation marks omitted). Critically, the First Circuit has made clear that where, as here, the works at issue contain both protectable and non-protectable elements, courts must take into account *only* protected expression in the substantial similarity analysis. *Id.* at 33-34. Thus, courts must first "'dissect' the work to remove those aspects not protected by copyright." *Id.* at 35. After dissection, a "plaintiff's actual protected expression is compared to the alleged infringing work to determine whether they are 'substantially similar.'" *Greenberg v. Town of Falmouth*, No. 04-11934, 2006 WL 297225, at *2 (D. Mass. Feb. 8, 2006).

Therefore, for Hassett to prevail on her claim of copyright infringement, she must demonstrate substantial similarity between the works relating only to the original, protected elements of her work. *Johnson v. Gordon*, 409 F.3d 12, 19 (1st Cir. 2005). Further, even if there

---

[6] For the purposes of this motion only, Defendants do not contest the validity of Hassett's copyright or Defendants' access to *Living With Celiac Disease*. But to be clear, should the case proceed beyond this motion—and it should not—the evidence will show that Defendants did not have access to Hassett's work, that *The G-Free Diet* was independently created and that no copying occurred.

are some similarities as to the protected elements, a claim for infringement cannot stand if those similarities are "not substantial, and the differences between the works are fundamental and extensive." *Quaglia v. Bravo Networks*, No. 06-1864, 2006 WL 3691667, at *1 (1st Cir. Dec. 15, 2006); *Greenberg*, 2006 WL 297225, at *4 (substantial similarity cannot exist "if the 'points of dissimilarity . . . exceed the points of similarity' and 'the remaining points of similarity are . . . of minimal importance either quantitatively or qualitatively'").

It is well-established that the issue of substantial similarity may be determined by the trial court as a matter of law on a motion to dismiss where the alleged "similarity between two works concerns only non-copyrightable elements of the plaintiff's work" or where no reasonable jury could find that the remaining protectable elements between the works are substantially similar. *Gaito*, 602 F.3d at 63 (affirming Rule 12(b)(6) dismissal of infringement claim).[7] Courts in this Circuit and others have routinely disposed of copyright infringement claims prior to discovery where a comparison of the alleged similarities and the works at issue established that substantial similarity of protectable expression did not exist. *See, e.g.*, *Lapine v. Seinfeld*, No. 08 Civ. 128, 2009 WL 2902584, *9 (S.D.N.Y. Sept. 10, 2009), *aff'd*, No. 09-4423-cv, 2010 WL 1688713 (2d Cir. Apr. 28, 2010) (rejecting infringement claim where alleged similarities between two books about hiding healthy food in children's meals related to unprotectable processes, stock elements and format, and where a review of the works confirmed that there was no similarity in any protected expression); *Dunn*, 517 F. Supp. 2d at 542 (concluding, based on a comparison of two

---

[7] *See also Rodriguez v. Casa Salsa Rest.*, 260 F. Supp. 2d 413, 420-21 (D.P.R. 2003); *Adams v. Warner Bros. Pictures Network*, No. 05 CV 5211, 2007 WL 1959022, at *5 (E.D.N.Y. June 29, 2007); *Le Book Publ'g, Inc. v. Black Book Photography, Inc.*, 418 F. Supp. 2d 305, 310 (S.D.N.Y. 2005); *Bell v. Blaze Magazine*, No. 99 Civ. 12342, 2001 WL 262718, at *3 (S.D.N.Y. Mar. 16, 2001); *Boyle v. Stephens, Inc.*, No. 97 Civ. 1351, 1998 WL 80175, at *4 (S.D.N.Y. Feb. 25, 1998), *aff'd*, 21 Fed. Appx. 76 (2001); *Buckman v. Citicorp*, No. 95 Civ. 0773, 1996 WL 34158, at *3 (S.D.N.Y. Jan. 30, 1996), *aff'd*, 101 F.3d 1393 (2d Cir. 1996).

thrillers with religious overtones, that "no ordinary reader could conceivably find any substantial similarity between the books"); *Rodriguez*, 260 F. Supp. 2d at 420 (dismissing copyright claim with prejudice because alleged similarities were not copyrightable and because there were so many fundamental differences that plaintiff "could not possibly show that they are substantially similar in the eyes of the ordinary observer").

**B.     The Alleged Similarities Are Not Actionable As A Matter Of Law**

Hassett alleges that *The G-Free Diet* is substantially similar to *Living With Celiac Disease* in content and structure.  As "proof" of this supposed similarity, Hassett presents two exhibits, a "color coded compendium" of alleged similarities in words and phrases (Compl. Ex. D) and a list that purports to show the "framework similarities" between the two works (Compl. Ex. C).  These exhibits are incomplete and misleading:  The 14-page compendium cobbles together random, cherry-picked passages, which comprise a fraction of the total content of the two works.  In her list of "framework similarities," Hassett conveniently omits chapters that do not support her allegations, cites chapters of *The G-Free Diet* out of order to fit the order of *Living With Celiac Disease*, and even resorts to correlating single pages out of one work to chapters in the other.

Even these selective and misleading exhibits confirm, however, that Hassett's claim reduces to one of exclusive rights to elements that are not protected by copyright law:  (1) well-known and long-studied medical facts about celiac disease and scientific facts about gluten; (2) stock elements common to the genre; (3) mundane and inevitable words and phrases, such as "double-dip" and "trigger"; and (4) purported similarities in structure that are either common to the genre or wholly misrepresented.  Her claim is premised on a false sense of entitlement that the copyright law clearly rejects, and should be dismissed.

### 1.    The Allegedly Similar Facts Cannot Support A Finding Of Copyright Infringement.

Hassett's complaint seeks a monopoly over facts and data about celiac disease, a medical condition that affects millions of people and has been studied and written about for decades.  In fact, the vast bulk of the alleged similarities highlighted in Exhibit D relate to basic facts that would be found in nearly any work about celiac disease.  For example, Hassett asserts that she has an exclusive right to:

> ➤ The fact that celiac disease is also known as "celiac sprue" and is an autoimmune disease that causes the body to attack itself
> ➤ The well-established symptoms of celiac disease and conditions associated with the disease, including osteoporosis, reproductive issues, and miscarriages
> ➤ Facts relating to which grains, foods, or personal care products may contain gluten

*See* Compl. Ex. D; *see also* Appendix A.

That assertion is wrong as a matter of hornbook copyright law.  It is "universally understood" that "there can be no valid copyright in facts."  *Feist*, 499 U.S. at 344; *see also Dunn*, 517 F. Supp. 2d at 545 ("[I]t is well settled that 'facts' cannot be copyrighted.").  Accordingly, before conducting the substantial similarity analysis, a court must remove all factual references from consideration.  *Yankee Candle*, 259 F.3d at 35.

Applying these established legal principles, courts have summarily disposed of copyright infringement claims centered on the discussion of similar, or even identical, facts in two works.[8]  For example, in *Debitetto v. Alpha Books*, 7 F. Supp. 2d 330 (S.D.N.Y. 1998), the court dismissed a copyright infringement claim involving guides on dog training and care.  *Id.* at 332.

---

[8]  Some circuits have noted that the substantial similarity standard is higher when two factual works are at issue, and that "similarity of expression may have to amount to verbatim reproduction or very close paraphrasing before a factual work will be deemed infringed."  *Cooling Sys. & Flexibles, Inc. v. Stuart Radiator, Inc.*, 777 F.2d 485, 491 (9th Cir. 1985); *see also Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 980 (2d Cir. 1980) (historical facts and theories are in the public domain and may therefore be freely copied, so long as the defendant does not "bodily appropriate" plaintiff's expression).

The works at issue discussed many of the same topics; for instance, both discussed various parasites that dogs can encounter, including mange, roundworm, coccidia, flea infestation, and ticks, as well as the treatments for each. *Id.* at 334. Not only were the topics similar, the factual content of the works was "undeniably similar." *Id.* For example, both discussed "the way in which mange burrow into a dog's skin and the problems they can cause," both described "the appearance of roundworms, how they infect dogs, and the symptoms of roundworm infection," both related that "coccidia are one-celled protozoa that can cause inflammation of the intestinal tract" and both emphasized that "frequent vacuuming is important in countering flea infestation." *Id.* In addition, the allegedly infringing work featured a list of poisons that tracked plaintiff's list exactly, except for the omission of one word to correct a mistake, which in the court's view, indicated "that the list was copied." *Id.* at 335.

Despite these seemingly abundant similarities, the court held that substantial similarity could not be found as a matter of law because these "statements of scientific fact or medical fact or procedures for caring for a dog" were non-protectable and could therefore be freely copied. *Id.* at 334. The court also observed that given the overlap in subject matter, an overlap in topics and facts was inevitable, and could not form the basis of an infringement claim. *Id.*; *see also Churchill Livingstone, Inc. v. Williams & Wilkins*, 949 F. Supp. 1045, 1051 (S.D.N.Y. 1996) (holding that neither facts relating to embryology, like "the nature of an embryo's development and growth, and the scientific principles defining normal and abnormal embryological processes," nor topics such as "the effects of cocaine on embryo growth" could form the basis of an infringement claim).

Hassett's claim is centered upon "statements of scientific fact or medical fact or procedures for caring for" celiac disease, which are non-protectable as a matter of law. Indeed, countless prior works on celiac disease contain the same selection of facts that Hassett seeks

exclusive ownership of, including *The Gluten-Free Bible* (Henry Hold & Co. 2005), *Celiac Disease: A Hidden Epidemic* (Collins 2006) and *Living Gluten Free for Dummies* (Wiley Publishing 2006).  *See also* Snyder Decl. Exs. 7, 8, 10-14, 17-20, 22, 24, 25, 28, 29 (collecting additional prior works).[9]

It is clear from Hassett's own exhibit that when these non-copyrightable elements are excised, there are no similarities.  For instance, Hassett compares these two passages:

> [Susan Hassett] pg 34 – **Infertility** – There is no doubt in my mind that I would not be able to carry a child to term because of the damage from having <u>this disease</u> for so many years undiagnosed.  I am forty-three now, a little old to be having a child.  I am lucky if I get my period once a year.

> [Elisabeth Hasselbeck] pg 27 – **REPRODUCTIVE ISSUES** – unexplained infertility and recurrent spontaneous abortions are higher for women with <u>celiac disease</u>-- . . .
> Other reproductive issues they might experience include delayed periods, menstrual irregularities, and <u>premature menopause</u>.

Compl. Ex. D at 5 (underlining in original); *see also* Appendix A.  Aside from the basic topic of celiac disease and reproductive issues, the passages share no similarities in any actionable expression.  In fact, the language, approach, style, and tone are markedly *dissimilar*.  Moreover, Exhibit D conveniently disregards the many other factual statements and topics addressed in one work that are not covered or only mentioned in the other.  For example, *Living With Celiac Disease* contains separate chapters on antioxidants, enzymes, herbs, vitamins, and dermatitis herpetiformis, which *The G-Free Diet* at most references briefly.  Conversely, *The G-Free Diet* devotes entire chapters to the benefits of gluten-free living on autism and general health, whereas *Living With Celiac Disease* devotes just a few paragraphs to them.  In short, the only similarity between the two works is that they address celiac disease and some of the same unprotectable

---

[9]  The works collected in the exhibits to the Snyder Declaration are illustrative only and represent only a small fraction of the countless previously published and readily available books and articles about celiac disease and gluten-free living.

topics and facts relating to the disease.  That cannot be a basis for copyright infringement.

### 2. The Allegedly Similar Ideas And Associated Stock Elements Cannot Support A Finding Of Copyright Infringement.

Hassett also seeks protection for ideas and stock elements necessarily incident to a book

about dealing with celiac disease, such as:

➢ Narratives describing the author's personal struggles with celiac disease

➢ Encouragement to others who have celiac disease

➢ Tips for living with celiac disease, including kitchen tips and tips about what food and personal care products to avoid

➢ Tips for raising a child with celiac disease

Compl. Ex. D; *see also* Appendix A.

Here again, Hassett evinces a fundamental misunderstanding of copyright law.  As

codified in the governing statute, "[i]n no case does copyright protection for an original work of

authorship extend to any idea, procedure, process, system, method of operation, concept,

principle, or discovery . . . ."  17 U.S.C. § 102(b); *see Johnson*, 409 F.3d at 19 ("[C]opyright law

protects original expressions of ideas but it does not safeguard either the ideas themselves or

banal expressions of them.").  And under the associated doctrine of *scenes a faire*, "stock scenes

or elements that necessarily flow from a common idea" are likewise not protected.  *Steele v.*

*Turner Broad. Sys., Inc.*, 646 F. Supp. 2d 185, 190 (D. Mass. 2009).  Accordingly, in numerous

cases, courts have rejected copyright claims where, as here, the alleged similarities related to

ideas and stock elements.[10]

---

[10] *See, e.g.*, *Williams v. Crichton*, 84 F.3d 581, 589 (2d Cir. 1996) ("electrified fences, automated tours, dinosaur nurseries, and uniformed workers" in a story about a dinosaur zoo); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 50 (2d Cir. 1986) ("drunks, prostitutes, vermin," "derelict cars," "foot chases," "morale problems of policemen" and "Irish cop[s]" in a story about police officers in the South Bronx); *Hoehling v. Universal City Studios*, 618 F.2d 972, 979 (2d Cir. 1980) (a "beer hall," "common German greetings" during the era, and the German national anthem in a work concerning the Hindenburg Zeppelin disaster).

In an analogous case, *Duffy v. Penguin Books USA Inc.*, 4 F. Supp. 2d 268 (S.D.N.Y. 1998), the court rejected a copyright infringement claim based on alleged similarities between style manuals for plus-sized women.  Both manuals categorized women's body shapes into four corresponding categories; both had separate chapters on accessories, hair, and makeup; both offered directions for taking measurements; both discussed the effect of clothing color and texture on appearance; and both urged readers to recognize their own style preferences.  *Id.* at 272-74.  The court held that all of these similarities related to non-protectable ideas, facts, and *scenes a faire*—elements that one would expect in any style manual for plus-sized women.  *Id.*

Similarly, in *Lapine*, the court disposed of a copyright claim involving two cookbooks about hiding vegetables in foods children enjoy.  2009 WL 2902584, at * 11.  After concluding that the works' underlying idea of making, storing, and using vegetable purees in children's meals was not protectable, the court addressed plaintiff's laundry list of specific similarities, holding that they constituted non-copyrightable *scenes a faire*:

> An introduction by a doctor, an author's narrative about her struggle to convince her kids to eat healthy foods, and a title and artwork using words or pictures to convey sneaking or hiding vegetables all flow naturally from the chosen subject matter: getting kids to eat healthy foods by sneaking healthy foods in more desirable, kid-friendly foods.

*Id.* at *8-9.  In so holding, the court observed that numerous prior works contained the same stock elements that plaintiff alleged to be original to her and misappropriated by defendants.  *Id.*

Similarly here, personal narratives, tips on how to live with the disease, and encouragement to readers are inevitable components of a book about dealing with celiac disease—or any book counseling readers with chronic health issues.  The repeated appearance of these stock devices in prior works on the topic demonstrates their inevitability and confirms that they are predictable, unoriginal, and not protectable.  *See, e.g.*, Snyder Decl. Exs. 6, 10, 14-23, 26, 27 (collecting prior works with same stock elements).

Even a cursory examination of the two works in this case confirms that to the extent that they share any unprotectable stock elements, there is no similarity in protected any protected expression of these elements.  For example, although both works expectedly provide tips for living with celiac disease, the discussions are remarkably *dissimilar* in content:

> [Hassett] pg 36 – Be prepared to change all products you use.  Anything that is ingested or put on your skin should be checked to see if there is gluten in them.  If you are just finding out you have celiac disease you literally must check out everything in your house for gluten.

> [Hasselbeck] pg 50 – (**Points to Remember**) – Many unlikely foods and products, including shampoo and vitamins, might actually contain gluten.  (There is some debate whether gluten in shampoo and body products can hurt you, but – as I discuss in detail in Chapter 14, "Gorgeously G-free" – I always like to play it safe.)  "Wheat-free" does not mean the same thing as "gluten-free."  A product could contain no wheat flour, but be filled with rye or barley.

Compl. Ex. D at 6; *see also* Appendix A.  That the two books both provide tips for those who suffer from celiac disease—which are entirely dissimilar in any protected expression—cannot, as a matter of law, support Hassett's claim for copyright infringement.

**3.    The Allegedly Similar Words And Short Phrases Cannot Support A Finding Of Copyright Infringement.**

Hassett next alleges that *The G-Free Diet* appropriated "dozens of paraphrased as well as word for word phrase lifts" from her book, as supposedly shown by Exhibit D.  Compl. ¶ 15.  But Exhibit D simply plucks isolated phrases from the two works at random.  To the extent that the phrases are similar at all,[11] they relate to mundane words, such as "trigger" and "double-dip," or short phrases inevitable to the genre, such as "gluten" and "challenge."  Compl. Ex. D; *see*

---

[11] Although Hassett appears to use a "color coded" system to highlight similar phrases, many of the same colored phrases are obviously *not* similar.  *See, e.g.*, Compl. Ex. D at 6 (comparing "if you have a relapse, just start again" to "[t]hese slipups happen to everyone"), at 7 (comparing "If in doubt leave it out" with "better safe than sorry"), at 10 ("I do not wear make up never have" with "it also sneaks into a wide range of personal care products"); *see also* Appendix A.  It is clear that Hassett's complaint with respect to these passages goes to the underlying ideas or concepts, which are not protectable.

*also* Appendix A.  The appearance of a handful of common phrases in two books on the same subject, each of which exceeds 200 pages, is legally insufficient to sustain a copyright infringement claim.

"It is axiomatic that copyright law denies protections to 'fragmentary words and phrases' and to 'forms of expression dictated solely at functional considerations' on the grounds that these materials do not exhibit the minimal level of creativity necessary to warrant copyright protection."  *CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504, 1519 (1st Cir. 1996); *see also* 37 C.F.R. § 202.1(a) (1994) (excluding from copyright protection "[w]ords and short phrases such as names, titles, and slogans").  Applying this hornbook law, courts routinely reject copyright claims based on common words and phrases.  *See, e.g.*, *CMM*, 97 F.3d at 1520 (rejecting claim of infringement where phraseology "involve[d] clichéd language that is typically used to convey the idea of employment: 'if you're still 'on the clock' at quitting time' and 'clock in and make $50 an hour'"); *Johnson*, 409 F.3d at 24 (holding that the phrase "You're the One for Me," which also appeared in countless prior works, was "too trite to warrant copyright protection"); *Steele*, 646 F. Supp. 2d at 191 (explaining that short phrases such as "come on" and "here we go" are too trite and common to warrant copyright protection).

It is entirely unremarkable (indeed, it is predictable) that select passages in the two works at issue here use certain words—such as "gluten" and "challenge"—given that the works both address similar unprotected facts and ideas related to celiac disease.  *See, e.g.*, *Matthews v. Friedman*, 157 F.3d 25, 28 (1st Cir. 1998) (rejecting allegation of infringement where any similarity "rest[ed] on the fact that both phrases are seeking to express essentially the same idea"); *Duffy*, 4 F. Supp. 2d at 274 ("While the substantive content of these discussions is often undeniably similar, these passages are in many cases no more similar than any two discussions might be of the same set of underlying facts, which, in any event, are not subject to copyright

protection.").  In the rare instance that the two works have similar phrases, they are short, banal

and not actionable.  *See, e.g.*, Compl. Ex. D at 6 (comparing "just start again" with "starting

afresh").  Not surprisingly, prior works about celiac disease contain the same or similar

inevitable words and phrases that Hassett alleges Defendants misappropriated.  *See, e.g.*, Snyder

Decl. Exs. 7, 9, 11, 15, 21 (collecting prior works).  Like the ideas and stock elements they

express, the words and short phrases on which Hassett hangs her claim are not copyrightable and

cannot support a finding of substantial similarity.

> **4.      The Allegedly Similar "Framework" Cannot Support A Finding Of
> Copyright Infringement.**

Finally, Hassett alleges that the two works utilize "an almost identical order and format,"

which she contends is proven by Exhibit C, entitled "Framework Similarities."  Compl. ¶ 16.

But to the extent that the two works share any similarity in framework, it is legally irrelevant

because the basic structure of a self-help book is not protected by copyright law.

As an initial matter, it is plain that Hassett has improperly "attempted to demonstrate

substantial similarity . . . 'by an analysis which alters the actual sequence or construction of

plaintiff(s') work in order to achieve a juxtaposition that makes for greater similarity with

defendant(s') work.'"  *Warner Bros. Inc. v. Am. Broad. Cos.*, 654 F.2d 204, 211 (2d Cir. 1983).

Hassett's jumbled list completely distorts the true contents and order of the two works by

disregarding numerous chapters in both works, citing chapters of *The G-Free Diet* out of order,

and correlating singe pages in one work to entire chapters in the other.  For example, Hassett

cites the following as evidence of the "framework similarities" between the two books:

> Hassett Chapter 6: Dermatitis Herpetiformis
> Hasselbeck Chapter 3 (pg 24 bottom box): Dermatitis Herpetiformis
>
> Hassett Chapter 7:  Helpful hints for your kitchen
> Hasselbeck Chapter 6:  What's Mine Is Yours (Well, Sort Of)

> Hassett Chapter 7-D:  Cooking Tips: 7-G Cooking Terms
> Hasselbeck Page 132:  Deciphering the Menu:  The G-Free Detective

Compl. Ex. C.  Far from establishing an "almost identical" framework, Exhibit C highlights just how dissimilar the works are, which is confirmed by one glance at the actual table of contents of the two books.  *Compare* Snyder Decl. Ex. 4 at vii-viii *with* Snyder Decl. Ex. 5 at Contents.

In any event, the Supreme Court has made clear that otherwise non-copyrightable material is not subject to protection where it is "selected, coordinated, and arranged in a way that utterly lacks originality."  *Feist*, 499 U.S. at 363-64; *see Arica Inst., Inc. v. Palmer*, 970 F.2d 1067, 1076 (2d Cir. 1992) (a "'practically inevitable' ordering . . . embodies no creativity and is non-copyrightable") (citation omitted).  Courts in this Circuit have cast even stronger doubt on copyright claims based on supposedly similar structures, stating that such similarities have "little or no support in the law as a basis for a copyright claim."  *Dunn*, 517 F. Supp. 2d at 544.

There is not a modicum of creativity that brings the organization or sequence of Hassett's book inside the realm of the protectable.  Like any self-help book, *Living With Celiac Disease* starts with a dedication, provides some factual background on the disease, then proceeds to the "how-to" part (which is mixed with factual background on other topics).  *See, e.g.*, Snyder Decl. Ex. 30 (collecting prior works that utilize the same basic structure).  Such a generic structure does not qualify for copyright protection.  *See Lapine*, 2009 WL 2902584, at *9 ("Beginning a cookbook with an illustrated cover, following it with an introduction by a third-party, a narrative by the author, list of appliances and ingredients . . . , instructions about preparing common ingredients, and a list of recipes, are insufficiently creative or novel modes of expression to render the use of similar organizational structures . . . actionable").  In short, the alleged "framework similarities" cannot save Hassett's claim.

**C.     The Substantial Dissimilarities Between The Two Works Preclude Any Finding Of Copyright Infringement**

Because all of the points of alleged similarity identified by Hassett are non-protectable, they must be excised before examining whether the any substantial similarity in protected expression exists between the works.  When just the protected elements are compared, as required by First Circuit law, it is clear that the two books are starkly <u>different</u> in the particular selection and arrangement of topics, as well as in their expression, style, and tone.  Given these numerous and significant differences, no ordinary observer could reasonably find that the two books are substantially similar.  *See Rodriguez*, 260 F. Supp. 2d at 420-21 (copyright infringement claim could not be sustained because "there are so many fundamental differences between the restaurants that Plaintiff could not possibly show that they are substantially similar in the eyes of the ordinary observer, as required by law"); *Durham Industries v. Tomy Corp.*, 630 F.2d 905, 913 (2d Cir. 1980) ("numerous differences tend to undercut substantial similarity").

First, with respect to the particular selection and arrangement of topics, what Hassett fails to mention (and what Exhibits C and D conceal) is that more than half—about 130 pages out of 248—of *Living With Celiac Disease* consists of recipes.  Snyder Decl. Ex. 5 at 102-230. Another chapter of the book, entitled "Helpful hints for your kitchen," lists general tips on cooking, making life easier in the kitchen, herbs and spices, buying fruits and vegetables, and cooking terms—most of which seem to have no direct relation to celiac disease or gluten avoidance.  *See, e.g.*, Snyder Decl. Ex. 5 at 47 ("Calorie-free club soda adds sparkle to iced fruit juices.").

By contrast, *The G-Free Diet* contains just four Italian recipes adapted from family dishes.  *See* Snyder Ex. 4 at 104-09.  The largest part of the book—nine chapters, comprising over 100 pages—consists of tips and strategies on how to live gluten-free in society.  Several of the chapters instruct readers seeking to go G-free on how to navigate common social situations,

such as at parties, in restaurants, and while traveling.  The book also has a chapter that gives advice to people living with someone who is gluten-free.  Hassett's book, on the other hand, does not have separate chapters or numbered tips addressing different social scenarios.  In fact, the book does not focus on how to deal with celiac disease in the context of social situations, nor does it provide any advice to people who themselves might not have celiac disease.

Second, in terms of style and tone, the two books are markedly different.  *Living with Celiac Disease* is a self-published paperback, replete with informal, stream-of-conciousness prose and numerous grammatical errors.   For instance, in discussing infertility, Hassett writes: "Infertility—There is no doubt in my mind that I would not be able to carry a child to term because of the damage from having this disease for so many years undiagnosed.  I am forty-three now, a little old to be having a child.  I am lucky if I get my period once a year."  Snyder Decl. Ex. 5 at 34.  The tone of the book is decidly negative:  Hassett focuses heavily on the hardships she has faced, and expresses disappointment at the current level of celiac awareness.

*The G-Free Diet*, by contrast, is a more accessible and upbeat lifestyle manual, offering clear commentary and explanation about celiac disease and strategies for combatting it.  *The G-Free Diet* is written in fluid prose and provides more objective data.  For example, in discussing intertility, Hasselbeck writes:  "Over the last thirty years, the medical community has come to accept that incidences of unexplained infertility and recurrent spontaneous abortions are higher for women with celiac disease—as much as *four times* higher, according to a recent study conducted at the Thomas Jefferson University Hospital in Philadelphia."  Snyder Decl. Ex. 4 at 27.  And while Hasselbeck does tell the story of her struggles before diagnosis, the book has a much more positive tone than Hassett's.  *Compare* Snyder Decl. Ex. 4 at 75 ("In most cases, you will find customer service representatives eager and willing to help you out—most of them chose their careers because they love talking with and assisting people.") *with* Snyder Decl. Ex. 5 at 37

("If they say that there is no gluten in a product do not take that at face value tell them you would like that in writing.  If they will not send it to you in writing, it must be lie.").

These dissimilarities flow from the fundamentally different concepts of the two works. As Hassett describes in her dedication, *Living With Celiac Disease* is a collection of her "thoughts, opinions and trials and errors from [her] journey thus far of learning to live with celiac disease."  Snyder Decl. Ex. 5 at Dedication.  Hassett's personal hardships and opinions formed from them pervade the book, in terms of the advice she gives and even in her discussion of medical topics.  *The G-Free Diet* is a much more authorative and comprehensive "step-by-step" guide on how to succeed in living gluten-free.  *See* Snyder Decl. Ex. 4 at 11 (stating that the objective was to "provide an all-inclusive, easy-to-read survival guide to living without gluten and *loving* it").  While *The G-Free Diet* may have been inspired by Hasselbeck's own experiences, the book is based on substantial research, which is reflected in the citations to studies about celiac disease and quotes by medical experts.  No ordinary observer could overlook these obvious disparities and find these two works, either in their specifics or in their totality, to be substantially similar.  Hassett's claim should be dismissed.

### CONCLUSION

For all of the foregoing reasons, Defendants respectfully request that the Court dismiss the complaint with prejudice.

Dated:      August 2, 2010
            New York, New York                    By:___/s/ Orin Snyder_____

                                                  Orin Snyder (admitted *pro hac vice*)
                                                  Laura K. O'Boyle (admitted *pro hac vice*)
                                                  GIBSON, DUNN & CRUCTHER LLP

                                                  Robert L. Ullman (BBO# 551044)
                                                  Robyn S. Maguire (BBO# 660372)
                                                  NUTTER, MCCLENNEN & FISH LLP

                                                  *Attorneys for Defendants Elisabeth*
                                                  *Hasselbeck and Hachette Book Group*

## <u>CERTIFICATE OF SERVICE</u>

I certify that, on August 2, 2010, this document (filed through the ECF system) will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.


_____/s/ Orin Snyder_____


100903816_10.DOC